UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANNETTE DAVIS,   CASE NO. 21-cv-61958-SINGHAL

    Plaintiff,

v.

GREAT NORTHERN INSURANCE
COMPANY and FEDERAL INSURANCE
COMPANY,

    Defendants.
_____/

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR FINAL SUMMARY JUDGMENT

Plaintiff, Annette Davis ("Plaintiff" or "Davis"), by and through undersigned counsel, pursuant to Fed.R.Civ.P. 56 and S.D.Fla.L.R.56.1, submits her Reply Memorandum of Law in Further Support of her Motion for Final Summary Judgment in her favor and against Defendants, Great Northern Insurance Company and Federal Insurance Company.(collectively, "Chubb.")

### *SUMMARY OF THE ARGUMENT*

Even a cursory review of Chubb's Opposition to Plaintiff's Motion for Summary Judgment [DE 232] ("Plaintiff's Motion"), reveals that: (1) not even once does Chubb mention Chubb's February 14, 2019 letter from Mr. Bahadoran tacitly denying coverage for Akam; (2) Chubb's claim that "Davis and Chubb agree that an insured cannot enter into a *Coblentz* agreement unless an 'insurer denies coverage,'" is patently untrue as Ms. Davis never agreed to that as Chubb omits the second part to that proposition," or where, as here," the insurer defends under reservation of rights and the insured rejects that defense"; (3) in light of Chubb's denial of coverage and/or Akam's

1

proper rejection of Chubb's belated offer to defend under partial reservation of rights, Chubb's coverage defenses fail as a matter of law; (4) no "raising of a strawman analysis" of the "Other Insurance" provisions in the Chubb and AmTrust policies is required as the unambiguous **ORGANIC PATHOGEN EXCLUSION** in the AmTrust policies results in no "other valid and collectible insurance" other than the Chubb policies; (5) Chubb misconstrues New York Ins. Law § 3420 (d)(2) claiming that its applicability mandates both a "motor vehicle accident" or "'other accidents occurring in New York"; and (5) based upon the information known to Akam at the time of the settlement, the consent judgment was reasonable and made in good faith. Thus, Plaintiff's Motion should be granted.

## ARGUMENT AND CITATION OF AUTHORITY

I. **THE *COBLENTZ* AGREEMENT IS ENFORCEABLE AS CHUBB DENIED COVERAGE AND/OR AKAM PROPERLY REJECTED CHUBB'S BELATED QUALIFIED DEFENSE.**

Chubb's skewed position that "Davis concedes a unilateral settlement is invalid unless an insurer denies coverage [DE 232 at 2, ¶1] and "...Davis cannot prevail as a matter of law because Chubb never denied coverage;..." *Id.,* is simply unfounded and belied by the record before this Honorable Court.

Ms. Davis has always indicated that: "[U]nder controlling Florida law, an insurer is not bound by an authorized settlement unless: (1) **the insurer refuses to defend**, **or (2) the insurer defends under reservation of rights and the insured rejects that defense.** (Emphasis added.) *See, Mid-Continent Casualty Co.v American Pride Building Company*, *LLC,* 601 F.3d 1143, 1149-51 (11th Cir. 2010),*et.al.* [DE 198 at 11]; [DE 224 at 11-12].

Here, both prongs of *American Pride* are satisfied as Chubb tacitly denied coverage, including a defense and indemnity, by Chubb's February 14, 2019 letter (see Ms. Davis' Corrected Statement of Material Facts [the "SOF"] ¶ 6(l)) ; and by letter dated April 15, 2021, Akam properly rejected Chubb's belated offer to defend under a qualified reservation of rights. (SOF ¶ 12.)

Although Chubb's Opposition pretends that it never existed, Chubb's February 14, 2019 letter expressly states as follows,

> **In addition to the AmTrust primary policy, there are excess policies issued by Great American Insurance Company ("Great American" and Ironshore Indemnity, Inc. ("Ironshore") that must be exhausted before the Great Northern and Federal policies are implicated....Without considering multiple policy years, there is accordingly at least $26,000,000 of insurance that must be exhausted before the Great Northern and Federal policies are implicated...**(Emphasis added.) (SOF ¶ 6(l)**.)**

The exhaustion of the AmTrust policies can never occur because of the **ORGANIC PATHOGEN EXCLUSION**, *Id.*. If Chubb has its way, it would collect premium for the primary and excess policies, there would be no coverage for Akam under the AmTrust policies and NO coverage under the Chubb policies because the AmTrust policies were never exhausted. The only reasonable interpretation of the February 14, 2019 letter is that Chubb denied coverage for Akam, including a defense and indemnity.

At a minimum, Chubb improperly repudiated its defense and indemnity obligations to Akam. This resulted in a waiver of Chubb's rights to insist upon Akam's duties under the policies, including cooperating with Chubb and no voluntary payments. *See, e.g. Bryant v. Geovera Spec. Ins. Co.*, 271 So. 3d 1013 (4th DCA 2019, *citing Wegener v. Int'l Bankers Ins. Co,* 494 So. 2d 259 (Fla. 3d DCA 1986). New York law is in accord, *See, Columbus McKinnon Corp., v. Travelers Indemnity Co.,* 367 F. Supp. 3d 123 (S.D. New York, 2018). (When an insurer breached the duty to defend by

repudiating liability for an insured's claims, the insured is excused from performance of its "contractual obligations to cooperate and to obtain [the insurer's] consent to settle." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 151 A.D.3d 632, 633, 58 N.Y.S.3d 38 (1st Dep't 2017).

Chubb's second glaring omission is its failure to mention, let alone fairly address, Chubb's belated offer to defend and Akam's proper rejection of the defense under a partial Reservation of Rights under only one policy year. *(See*, Marino.Depo.,SOF ¶12.) This alone permitted Akam to settle this matter and enter into the consent judgment..) *See*, *American Pride,* 601 F.3d at 1149-51; *Frankel,* 509 F. Supp. 2d at 1310-11.

Further, Chubb's "decision to participate" in Akam's defense, through Ekaterina Djencic's December 10, 2020 email, triggered its duty to defend. (*See,* SOF ¶8) *See also, Preferred Constr., Inc. v. Ill. Nat'l Ins. Co.*, 494 F. App'x 162, 164–65 (2d Cir. 2012)(citing *Fieldston Prop. Owners Ass'n*, 16 N.Y.3d at 265) In response, by letter dated April 15, 2021, Akam properly rejected the defense offered by Chub under a partial Reservation of Rights. (See Marino Depo., *Id.*) ¶12.)

None of the cases relied upon by Chubb, including *U.S. Fire Ins. Co. v. Mikes,* 576 F. Supp. 2d 1303 (M.D. Fla. 2007) and *Houston Spec. Ins. Co., v. Fenstersheib,* 2022 WL 4880148 (S.D. Fla. 2022) involve factually similar circumstances in which the insurer denied coverage and/or the insured rejected a qualified defense. *See also*, *United Nat. Ins. Co., v. Jacobs*, 754 F.Supp. 865,870 (M.D. Fla. 1990) ( In fact, Chubb acknowledges that in *Jacobs*, "[The insured] never rejected the defense provided by [his insurer...." [DE 232 at 6, ¶2].

Accordingly, both *American Pride* prongs are satisfied and Chubb's failure to cooperate and voluntary payment defenses fail as a matter of law enabling Akam to protect its own interests by entering into the consent judgment. *cf, American Pride,* 601 F.3d at 1149-51; *Frankel Enterprises*,

4

509 F. Supp. 2d at 1311.

## II.   THE CHUBB POLICIES ARE THE ONLY POLICIES THAT COVER MS. DAVIS' MOLD-RELATED DAMAGES.

***A.  The Mold-Related Damages are Excluded Under the ORGANIC PATHOGEN EXCLUSION; Thus, The AmTrust Policy Is Not "Other Valid and Collectible Insurance" Under The Chubb Policies.***

Realizing that Ms. Davis' mold-related damages are excluded under the **ORGANIC PATHOGEN EXCLUSION,** Chubb does not attempt to argue that the mold-related damages are covered under the AmTrust policies. Rather, Chubb posits unsuccessfully that Chubb's "Other Insurance" provision renders the Chubb policies excess. The "Other Insurance" provision in the Chubb policies provides that, "If **other valid and collectible insurance is available to the insured for loss we would otherwise cover under this insurance**, our obligations are limited as follows..." (Emphasis added.) (SOF ¶ 6(r). Chubb argues that for its polices to be excess, the Am Trust policies need only be "'legal and valid' as distinguished from one which is invalid such as for fraud, or uncollectible such as for insolvency... on the date of the occurrence fixing liability." [DE 232 at 111-13]. Logic and equity dictate otherwise..

The general rule appears to be that "other valid and collectible insurance" must be ***insurance which can be collected by the person who is an insured under the policy with the "other insurance" clause.*** (Emphasis added.) *See, e.g.*, Consolidated Systems, Inc. v. Allstate Ins. Co., 411 F.2d 157, 159 (5th Cir. 1969); Aetna Cas. & Sur. Co. v. Security Ins. Co. of Hartford, 267 A.2d 582, 586 (Del. 1970). (To the extent "valid and collectible" or similar language is used in the applicable policy or relevant statutory provisions, insurance coverage is valid and collectible if the carrier issuing the coverage is solvent, and **there is no valid policy exclusion or limitation applicable to**

5

**the claim.** (Emphasis added). *See also, Carolina Cas. Ins. Co. of North America*, 595 F.2d 128, 143 (3d Cir.1979) accord, *The Claim Adjuster's Automobile Liability Handbook* **§ 3:2**, Nov. 2022 Update.

When carried to its logical conclusion, Chubb's coverage ruse results in NO coverage for Akam. If the Chubb policies are deemed excess and the AmTrust policies, although "legal and binding" on the date of loss, clearly exclude mold-related damages, Akam is bare with no coverage.. The more equitable and reasonable interpretation is that for the "other insurance" to apply there has to be no coverage defenses so that the insured is covered under the "other insurance" for the claimed damages. *See, Couch on Ins*. § 219.11, (3d ed. 2021) *accord, IHC, Inc. v. Affiliated FM Ins. Co.,* 451 F. 2d 758 (10th Cir. 1971); *Davis v. National American Ins. Co.*, 78 Mich. App. 225 (Ct. App. 1977).

III. **CHUBB MISCONSTRUES THAT NEW YORK LAW § 3420 (d)(2) APPLIES ONLY TO MOTOR VEHICLE ACCIDENTS OCCURRING IN NEW YORK**.

In another thinly veiled attempt to shirk its obligations, Chubb claims that it need not comply with § 3420 (d)(2) as it "only applies to bodily injury claims arising out of motor vehicle accidents or other accidents occurring in New York." [DE 232 at 13-14].

Under controlling New York law, § 3420 (d)(2**)** applies to any claim for bodily injuries and it not limited to motor vehicle accidents occurring in New York. *See, Jewish Community Center of Staten Island v. Trumbull Ins. Co.,* 957 F. Supp. 2d 215, 237 (E.D. New York, 2013). Chubb's claim that § 3420(d)(2) does not apply because it only applies to motor vehicle accidents, not any type of bodily injury accident, fails as a matter of law. *Trumbull Ins. Co.,* 957 F. Supp. 2d at 232-234.

Equally as significant, § 3420(d)(2) applies not only to New York accidents, but also to

**policies that cover insureds and risks located in the state**.(Emphasis added).*See, Carlson v. American Intern. Group, Inc.*, 30 N.Y.3d 288 (New York Court of Appeals, 2017). (["i]ssued for delivery" has been interpreted to mean where the risk to be insured was located and whenever a policy covers "insureds and risks located in this state" *Id.) See also,* Preserver Ins. Co. v. Ryba, 10 N.Y.3d 635, 862 N.Y.S.2d 820, 893 N.E.2d 97 (2008),

The Chubb policies themself expressly state that the insured Akam and its mailing address are in New York, the Producer is in New York and Chubb's Servicing Office is in New York.*(See,*Chubb policy [SOF ¶ 6 r]). Thus, it is clear that Akam is "located in" New York because it has a substantial business presence and creates risks in New York. Akam purchased the Chubb liability insurance from a New York producer covering risks in New York and the policies were issued by Chubb in New York. Therefore, New York law,§ 3420 (d)(2) applies to this controversy. Chubb concedes that it never gave written notice of a disclaimer of coverage to Akam and Davis, the injured party, as soon as reasonably possible after Akam tendered it to the Chubb on July 19, 2018. (*See* Acord, SOF ¶ 6(g).) Thus, as a matter of law, Chubb is precluded from denying coverage for Akam under New York Ins. Law § 3420 (d) (2); *U.S. Underwriters Ins. Co.*,369 F.3d at 106–07; *Golden Ins. Co. v. Ingrid House, Inc*., 538 F. Supp 3d 293 (S.D. N.Y. 2021);*Century Surety Co.* 2017 WL 5952706 at *9.

    **IV.    THE CONSENT JUDGMENT IS ENFORCEABLE AS AKAM'S POTENTIAL LIABILITY AT THE TIME OF THE SETTLEMENT WAS CLEAR AND CULMINATED IN A REASONABLE AMOUNT AFTER GOOD FAITH NEGOTIATIONS.**

Chubb claims that the consent judgment was unreasonable as "[N]o reasonably prudent person would stipulate to a grossly excessive judgment of $14.5 million –which is 48 times greater than the highest settlement value recommended by Akam's sophisticated defense counsel. "[DE 232

at 14.] Chubb pretends that Conroy Simberg's recommendations never changed even after losing several key motions, including Summary Judgment on Unlicensed Mold Remediation (SOF ¶ 4.) Chubb simply ignores: (1) Mr. Tolari's testimony that even though Conroy Simberg's Pre-Mediation Report, dated January 31, 2019 and Pre-Trial Report, dated March 9, 2020, estimated that the chances of a liability\ verdict for Davis were 20% to 30%, those chances were "definitely getting worse." (SOF ¶ 24.) "....I was losing lots of sleep on behalf of the membership.... Judge Robinson granted it (punitive damages) in the first place made me nervous...."(SOF ¶ 22.); (2) Mr. Marino's testimony that, ".beginning in September of 2020 (he discussed) with Mr. Goldberg and Mr. McCausland the potential value of Ms. Davis's claim and the potential outcome of the litigation...it became more and more concerning to defense counsel that the outcome could be significant against AKAM and The Tides." (SOF ¶ 16.) "...[E]verybody involved from the mediation in September 2020 forward, everyone but Chubb acknowledged that this was an increasingly, threatening exposure to The Tides and AKAM. ...he (Mr. Goldberg) did say that over time things kept getting worse and worse." (SOF ¶18.) and, " ...Mr. McCausland said if he ever had a plaintiff's case, this would be the case that he would want.(SOF ¶19.); (3) Mr. Leonard stating that Ms. Davis could "ring the bell" and obtain a verdict well in excess of $25,000,000. (SOF ¶ 15.); (4) Mr. Haun agreeing that a jury verdict of $45,000,000 was possible (SOF ¶ 20.); and (5) Mr. Tolari testifying that, "The decision for the Tides to pay $900,000 to settle was based upon '..the recommendations of multiple trial and coverage counsel, as well as the attorneys on our board,... This brings certainty to our building rather than potentially high-risk exposure from a jury. [DE 212, No. 23 p. 196 lin. 8-19.] Thus, based upon the facts known to Akam at the time of the settlement, Akam's potential liability was abundantly clear and culminated in a settlement in an amount reasonable in view of the size of possible recovery and

degree of probability of Ms. Davis''s success and potential for a catastrophic judgment, *See, Luria Brothers & Company v. Alliance Assurance Company*, 780 F.2d 1082 (2d Cir.1986); *Bunge Corp. v. London and Overseas Insurance Co.*, 394 F.2d 496, 497 (2d Cir. 1968), *cert. denied,* 393 U.S. 952 (1968).

Chubb's strained attempt to show unreasonableness by its jury verdict searches fails to mention one jury verdict in which a Plaintiff, like Ms. Davis, has in excess of $22.3 million in boardable economic damages, without even considering any commensurate past and future pain and suffering. As this court is well aware, this case is very different than any other *Coblentz* case and by definition is unique and stands on its own.

Chubb's claim that the consent judgment was not negotiated in good faith is once again contrary to the record evidence. Akam had the benefit of a fully litigated Underlying Lawsuit on the eve of trial and did not agree to an arbitrary consent judgment without any "skin in the game." Notably, the Eleventh Circuit has opined that when the insured "actually pays for the settlement of the claim against him or where the case is fully litigated at trial before the entry of a judgment, the amount of the settlement or judgment can be assumed to be realistic." *Sidman v. Travelers Cas. and Surety*, 841 F.3d 1197,1202 (11th Cir. 2016) Here, not only should the consent judgment be assumed to be realistic, it was the product of negotiations and only 64.86 % of Ms. Davis' past and future medical expenses of $22,355,151, without any expected significant past and future pain and suffering .(SOF ¶ 30).The Tides paid $1 million and Akam paid $250,000 to avoid their perilous fate as part of a global resolution, which included the consent judgment.. While it is true that AmTrust contributed $250,000 toward the settlement ($150,000 on behalf of Akam and $100,000 on behalf of The Tides), there was no coverage under the AmTrust policies and AmTrust agreed to contribute

9

a negotiated amount of $250,000 toward settlement purely as a "cost of defense" and "voluntary payment." (See , Haun Depo. p.190 lin.25-p.191 lin. 1-21[DE 212, No. 20).

Chubb's claim that Mr. Caruso, Ms. Davis' CPA, used an incorrect inflation rate is legally and factually unsupportable. Mr. Caruso's Report and deposition reveals that he computed the future medical costs using alternative annual medical-cost growth rates of 4%, 5.7% and 7.6% and that although he used 4% as the conservative inflation rate, the 7.6% cost of future medical expenses was in accordance with the widely accepted industry standards set forth by PriceWaterhouseCoopers in 2020. (See, Plaintiff's Opposing Statement of Material Facts ([DE 211 at ¶ 100.) The total past and future medical expenses with the 7.6% inflation rate is $21,989,181. (See, *Id.*) According to Mr. Caruso, Ms. Davis' past and future lost earnings are $365,970. Thus, the total past and future medical expenses and lost earnings are $22,355,151 (Car.Dep [DE 211 No. 25] p.62 lin.3-25-p 64 lin.1-19.)

There was no reason for Ms. Davis to allocate the consent judgment among Chubb's three consecutive policies for Akam as it does not involve "covered" and "uncovered damages."

Given the foregoing, the consent judgment is enforceable against Chubb as Ms. Davis has established that: (1) her damages are covered by the Chubb policies; (2) Chubb wrongfully refused to defend, or its belated and qualified defense was properly rejected by Akam; and (3) the settlement is reasonable and made in good faith**.**

## CONCLUSION

For all of the foregoing reasons, final summary judgment in favor of Ms. Davis should be granted.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this **20th** day of December, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  We also certify that a true and correct copy of the foregoing document is being served this day on all counsel of record **via transmission of Notices of Electronic Filing generated by CM/ECF and/or United States Mail (for those parties not on the CM/ECF system).**

        RITTER CHUSID, LLP
        Attorneys for Plaintiff Annette Davis
        Heron Bay Corporate Center
        5850 Coral Ridge Drive, Suite 201
        Coral Springs, Florida 33076
        Telephone:   (954) 340-2200
        Facsimile:    (954) 340-2210
        E-Mail: mchusid@ritterchusid.com

**By:**     */s/ Mitchel Chusid*
        Mitchel Chusid, Esq.
        Florida Bar No. 879282