UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61958-SINGHAL/VALLE

ANNETTE DAVIS,

    Plaintiff,

v.

GREAT NORTHERN INSURANCE
COMPANY and FEDERAL INSURANCE
COMPANY,

    Defendants.
_____/

## **OPINION AND ORDER**

**THIS CAUSE** is before the Court upon Defendants' ("Defendants" or "Chubb" or "Chubb Insurers") Motion for Summary Judgment, filed on November 29, 2022 (the "Motion") (DE [203]). Defendants filed an accompanying Statement of Undisputed Material Facts ("DSOF") (DE [202]). Plaintiff ("Plaintiff" or "Davis") filed a Response on December 14, 2022 (DE [237]) and earlier an Opposing Statement of Material Facts on December 9, 2022 ("PSOF") (DE [221]).[1] Defendants filed a Reply (DE [243]) and Reply Statement of Material Facts ("RDSOF") (DE [244]) on December 20, 2022. The Motion is now ripe for this Court's consideration.

    **I.**  **BACKGROUND**

This lawsuit involves an insurance coverage dispute stemming from injuries Plaintiff allegedly suffered from exposure to toxic mold in her home. Plaintiff owned and resided in The Tides at Bridgeside Square Condominium (the "Tides"). *See* JSOF ¶ 1. Akam On-Site, Inc. ("Akam") was the property manager for the Tides. *See* JSOF ¶ 2.

---

[1] Each numbered paragraph, or portion therein, in the DSOF that is undisputed by the PSOF will be referenced as "JSOF."

Plaintiff sued Akam and several other entities in state court alleging negligent property management services in connection with annual maintenance work on a water-cooling tower at the Tides (hereinafter the "Underlying Action"). *See* Am. Compl. ¶¶ 10–25 (DE [23]). The botched maintenance work is alleged to have allowed water to infiltrate the condominium, creating a rampant mold infestation, which is alleged to have caused Plaintiff's injuries. *Id.*

Under Akam's property management contract, Tides designated Akam as a "named insured" in its liability policies. *See* (DE [202-4], at 10). At issue in this lawsuit are two separate sets of liability policies of Tides. The first set, issued by AmTrust International Underwriters ("AmTrust"), insured Tides under a primary commercial general liability policy. *See* (DE [23-1]). The AmTrust policies contain an "Organic Pathogen Exclusion," which excludes bodily injury, "which would not have occurred . . . but for . . . exposure to . . . any . . . '[o]rganic pathogen,'" which includes "any type of mold . . . ." *See* (DE [23-1], at 76–77). The second set, issued by the Chubb Insurers, insured Tides under primary insurance policies issued by Defendant Great Northern Insurance Company and excess and umbrella policies issued by Defendant Federal Insurance Company. *See* Am. Compl. ¶¶ 1, 35 (DE [23]); *see also* (DE [202-8]). Based on the Chubb policies' "other insurance" provisions, the Chubb policies were afforded excess priority to the primary AmTrust policies. *See* (DE [202-35]).

In a letter to Tides dated May 31, 2018, Amtrust stated that it "ha[d] agreed to provide [Tides] a defense against the claims asserted in the [Underlying Action] subject to certain rights reserved in this letter" and had "already arranged for such defense." *See* (DE [202-7], at 2). The letter referenced the organic pathogen exclusion noting that it might apply to the action "if bodily injury and/or property damage occurred due to the

result of mold." *Id.* at 5. The letter noted that "there may be no duty to indemnify . . . as a result of the plaintiff's allegations because [the] policy does not provide coverage for or indemnification of bodily injury or property damage resultant from mold." *Id.* at 7. The letter did not indicate its policy was excess over any other policy. *See generally* (DE [202-7]).

Amtrust retained the Conroy Simberg law firm to defend Akam in the Underlying Action. *See* (DE [202-5], at 38:9-12, 48–49, 61:11-23). Conroy Simberg "provided an unfettered defense to the [Tides] and [Akam] with respect to the claims . . . raised in [the Underlying Action]." *Id.* at 57–58, 82–83, 113:15-25. This defense included retaining five experts and providing a "full, complete defense" against all allegations against Akam. *Id.* AmTrust fully funded Akam's defense by paying all of Conroy Simberg's fees, costs, and expenses. *See* JSOF ¶ 29. AmTrust never wrote to Akam that the AmTrust policy was excess to Akam's own insurance policies, and AmTrust never asked Chubb to share defense costs. *See* (DE [202-5], at 114).

Akam first reported the incident to Chubb in July 2018, more than four months after Plaintiff initiated the Underlying Action. *See* (DE [202-9]). At that time, AmTrust was already fully defending Akam. *See* JSOF ¶ 33; (DE [202-10], at 17:12-22, 53:15–54:5, 56:20–57:14, 119:19–120:12, 123:2-24); (DE [202-5], at 73:3-8). On October 9, 2018, Chubb issued its first Reservation of Rights letter to Akam (the "10/9/2018 ROR"). *See* (DE [202-11]). This letter acknowledged that AmTrust was providing Akam a defense and stated the Chubb primary policy was in excess to the AmTrust policy issued to Tides that named Akam as an additional insured. *Id.* at 2, 4, 20. The letter explicitly stated that it was "not a denial of coverage" and that Chubb reserved all its rights under the policies, "which [Akam] acknowledges and accepts pursuant to this reservation of rights." *Id.* at 22.

3

On February 8, 2019, Chubb issued a second Reservation of Rights letter (the "2/8/2019 ROR"). *See* (DE [202-12]). That letter reiterated that AmTrust was defending Akam in the Underlying Action under a general liability policy issued to the Tides, under which Akam was an insured. *Id.* at 2. This letter additionally reiterated that Chubb was excess of AmTrust's primary policy, under which Akam was being defended, due to the Chubb policies' Other Insurance provision. *Id.* at 6, 21, 23. The letter concluded by explicitly stating it was "not a denial of coverage" and that Chubb "reserve[d] all [its] rights, which [Akam] acknowledges and accepts pursuant to this reservation of rights." *Id.* at 26. Akam did not reject, dispute, or otherwise object to anything contained in either the 10/9/2018 ROR or 2/8/2019 ROR in 2018, 2019 or 2020. *See* JSOF 41. And at no point did Chubb expressly disclaim coverage to Akam. *See* JSOF ¶ 42; (DE [202-11]; DE [202-12]; DE [202-10], at 222:7–223:2, 223:13-22).

Conroy Simberg, in the course of its defense of Akam, prepared multiple case evaluations which it provided to AmTrust and Chubb. *See* JSOF ¶ 44. In January 2019, Conroy Simberg prepared a 35-page "Pre-Mediation Report," which it sent to AmTrust and Chubb. *See* JSOF ¶ 46; (DE [202-14]). The Pre-Mediation Report concluded Davis had only a 20% to 30% chance of obtaining a favorable liability verdict and would face even more difficulty proving causation of damages. *See* (DE [202-14], at 35). The Pre-Mediation Report estimated the settlement value of the Underlying Action at $150,000 – $200,000, which was based on future defense attorneys' fees and costs through trial. *Id.* In March 2020, Conroy Simberg prepared a 59-page "Pre-Trial Report," which it provided to AmTrust and Chubb. *See* JSOF ¶ 50; (DE [202-15]). This report reiterated the conclusion Plaintiff only had a 20% to 30% chance of obtaining a favorable liability verdict and would face difficulty proving causation of damages. *See* (DE [202-15], at 59). The

4

report estimated a settlement value range of $150,000 – $250,000 based on future defense attorney fees and costs through trial. *Id.* During the Underlying Action, Plaintiff served a proposal for settlement to Akam for $3.75 million. *See* (DE [202-36], at 3). Plaintiff subsequently made a joint demand to Akam and the Tides for $2.975 million. *See* (DE [202-15], at 58).

In September 2020, the parties in the Underlying Action attended a second mediation, *see* (DE [202-5], at 98:3-15), and Akam retained attorney Stephen Marino of the law firm Ver Ploeg & Marino, P.A. ("VPM") as personal counsel, *see* JSOF 60. After mediation proved unsuccessful, on December 10, 2020, Chubb sent a letter to Akam advising Akam that Chubb had "decided to exercise its right to participate in the defense and retained [attorney] Pete L. DeMahy of DeMahy Labrador Drake & Cabeza [("DLD Lawyers")] as additional counsel representing [Akam] in the [Underlying Action]." (DE [202-18]). On December 16, 2020, Marino responded to Chubb's letter asking Chubb to "promptly and clearly articulate the terms under which Chubb is now offering to defend [Akam], so that an informed decision to accept or reject the defense can be made." (DE [202-19]). On December 22, 2020, Chubb responded writing that Chubb had "been handling this matter for Akam under a complete reservation of rights, which was accepted," and that "Chubb recently retained Pete DeMahy and [his law firm] DLD Lawyers to act as co-trial counsel for Akam." (DE [202-20]). On February 5, 2021, Marino advised Chubb that Akam was rejecting Chubb's qualified defense. *See* (DE [202-21]). On February 12, 2021, Chubb wrote to Akam stating Akam improperly attempted to reject Chubb's Reservation of Rights because Akam had acknowledged and accepted Chubb's reservation of rights over two years ago on February 8, 2019. *See* (DE [202-22]). Additionally, Chubb advised Akam that its interference with Chubb's attempt to associate

5

in defense counsel constituted a breach of the policy's Cooperation Provision. On April 15, 2021, Marino wrote to Chubb that Chubb had wrongfully refused to defend or acknowledge its indemnity obligation for the past two years and had belatedly offered a qualified defense, which Chubb was entitled to and did reject. *See* PSOF ¶ 72.

At the September 2020 mediation in the Underlying Action, Mediator Jeffrey Streitfeld, introduced the idea of a *Coblentz* agreement. *Id.* ¶ 73; JSOF ¶ 74. Because Akam did not immediately express interest in the *Coblentz* agreement during the weeks following the September 2020 mediation, Plaintiff filed a second lawsuit against Akam, the Tides, and Chubb in November 2020. *See* (DE [202-29]). According to Tides' counsel, Leonard, the Tides was interested in a *Coblentz* agreement partially because "any negligence that Akam had relevant to the safety of the building would nonetheless trigger and fall at the feet of [the Tides]," but the Tides lacked indemnity coverage for bodily injury based on the "pollution" or "pathogen exclusion" in the AmTrust policy. *See* (DE [202-27], at 97:13–98:17, 114:23–115:9). The Tides could not entertain any settlement from Davis unless Akam was also included because of the "cross-indemnity provisions under the Management Contract." JSOF ¶ 77.

Plaintiff, Akam, and Tides subsequently entered into a settlement of the Underlying Lawsuit (the "Coblentz Agreement") (DE [48-2]). The Coblentz Agreement included a payment in the sum of $250,000 to be made to Plaintiff, which included $100,000 to be paid directly from Akam and $150,000 to be paid by AmTrust on Akam's behalf. *Id.* at 7. Curiously, AmTrust was not a party to the Coblentz Agreement. *Id.* at 1. Second, the Coblentz Agreement assigned to Plaintiff all of Akam's claims against the Chubb Insurers arising out of their alleged denial of coverage for, and alleged refusal to defend Akam against, Plaintiff's negligence claims in the Underlying Lawsuit. *Id.* at 7. Third, the

6

Coblentz Agreement included a consent judgment in favor of Plaintiff for $14.5 million and specified that "Davis' right to seek satisfaction of the Consent Judgment [was] solely against [the Chubb Insurers] and the [Chubb Policies]." *Id.* at 8. Defendants now move for summary judgment on various grounds.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[2] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 F. App'x 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756

---

[2] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III. CHOICE OF LAW

A federal court exercising diversity jurisdiction applies the "choice of law" rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). A choice of law analysis is only necessary if the outcome would be different based on one state's laws over the other. A "false conflict" exists if "the laws of different states are (1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000) (citations omitted). Because Florida law is no different than New York law on the issues presented in this action, the parties agree this Court must apply Florida law. *See* Motion, at 2; Response, at 4. Plaintiff notes New York law differs on (i) when an insurer must provide a disclaimer of liability to be valid, and (ii) whether an insured need not establish actual liability to the party with whom it has settled to recover under a *Coblentz* agreement. *See* Response, at 4. For the purposes of this Order, the Court accepts Plaintiff's position on those two issues.

### IV. DISCUSSION

Defendants move for summary judgment on several grounds. First, Defendants

argue Akam breached the cooperation provision by entering into a *Coblentz* agreement because Defendants never disclaimed coverage, Defendants' duty to defend was never activated, and Akam interfered with Defendants' right to associate in defense counsel. *See* Motion, at 3–11. Second, Defendants contend the *Coblentz* agreement is unenforceable because it is not reasonable and was not negotiated in good faith. *Id.* at 12–18. Third, Defendants argue the *Coblentz* agreement is unenforceable because it does not allocate between covered and uncovered damages. *Id.* at 19–20.

Plaintiff responds arguing Defendants' policies are primary, not excess, because they are the only policies that could cover Akam for Plaintiff's mold-related damages due to the exclusions in Amtrust's policies. *See* Response, at 5–8. Second, Plaintiff asserts Defendants tacitly denied coverage in the February 14, 2019 letter. *Id.* at 8–9. Third, Plaintiff contends Defendants failed to comply with New York law's requirement regarding providing written notice of disclaimer of coverage as soon as reasonably possible. *Id.* at 9–11. Fourth, Plaintiff argues Akam's April 15, 2021 rejection of Chubb's offer to defend was proper and Akam was entitled to take control of its defense and enter into the *Coblentz* agreement. *Id.* at 11–14. Fifth, Plaintiff asserts the consent judgment is enforceable because Akam's potential liability at the time of the agreement was clear and culminated in a reasonable amount after good faith negotiations. *Id.* at 14–20.

### A. Burden of Proof

"Where an injured party wishes to recover under a *Coblentz* agreement, the injured party must bring an action against the insurer and prove [1] coverage, [2] wrongful refusal to defend, and [3] that the settlement was reasonable and made in good faith." *Chomat v. N. Ins. Co. of N.Y.*, 919 So. 2d 535, 537 (Fla. 3d DCA 2006) (cleaned up and citations omitted); *see also Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1324 (M.D. Fla.

2009). Accordingly, at this stage, Plaintiff must show a reasonable jury, based on the factual record, could reasonably find Plaintiff satisfied each of the three elements.

### B. Wrongful Refusal to Defend

"It is well-established that an insurer does not breach the duty to defend by offering to defend subject to a reservation of rights." *Travelers Indem. Co. of Conn. v. Att'y's Title Ins. Fund, Inc.* 194 F. Supp. 3d 1224, 1229 (M.D. Fla. 2016) (citing *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010), *aff'd*, 733 F. App'x 524 (11th Cir. 2018)). "[A]n insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy. Under these circumstances, an insurer may reserve its right to challenge coverage under the policy without breaching its duty to defend by providing a defense under a reservation of rights." *Am. Pride Bldg. Co., LLC*, 601 F.3d at 1149 (citations omitted). "[I]f the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense." *Bellsouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 671 (Fla. 3d DCA 2006) (citations omitted).

Here, as discussed above, Chubb issued its first Reservation of Rights letter to Akam on October 9, 2018. *See* (DE [202-11]). This letter acknowledged that AmTrust was providing Akam a defense and stated that Chubb's primary policy was in excess to the AmTrust policy issued to Tides that named Akam as an additional insured. *Id.* at 2, 4, 20. The letter explicitly stated that it was "not a denial of coverage" and that Chubb reserved all its rights under the policies. *Id.* at 22. On February 8, 2019, Chubb issued the second Reservation of Rights letter. *See* (DE [202-12]). That letter reiterated that AmTrust was defending Akam in the Underlying Action under a general liability policy issued to the Tides, under which Akam was an insured. *Id.* at 2. This letter additionally reiterated that

10

Chubb was excess of AmTrust's primary policy, under which Akam was being defended, due to the Chubb policies' Other Insurance provision. *Id.* at 6, 21, 23. The letter concluded by explicitly stating it was "not a denial of coverage" and that Chubb "reserve[d] all [its] rights . . . ." *Id.* at 26. Akam did not reject, dispute, or otherwise object to anything contained in either the 10/9/2018 ROR or 2/8/2019 ROR in 2018, 2019 or 2020. *See* JSOF 41. And at no point did Chubb ever expressly disclaim coverage to Akam. *See* JSOF ¶ 42; (DE [202-11]; DE [202-12]; DE [202-10], at 222:7–223:2, 223:13-22).

In December 2020, after handling the lawsuit under a reservation of rights for two years, Defendants offered to supplement Akam's trial team by adding a second law firm. After the second unsuccessful mediation, Chubb advised Akam it had decided to exercise its right to participate in the defense and retained counsel. Counsel for Akam subsequently rejected and prevented Defendants' retained counsel from associating in the defense of Akam, arguing that Chubb had wrongfully refused to defend for the past two years.

No reasonable jury could find Chubb refused to defend Akam. There is no language cited in any correspondence indicating a refusal to defend. In fact, the two key pieces of correspondence from Chubb expressly state they are not to be construed as denials of coverage. Plaintiff's argument that Chubb's February 14, 2019[3] letter was a tacit denial of coverage is entirely unsupported both in law and fact. Plaintiff essentially argues that Chubb effectively denied coverage by pointing out that its policies were excess to the AmTrust policies because the AmTrust policies contained an exclusion that would make them uncollectible in the Underlying Action. Plaintiff cites no authority for this novel argument and the Court is aware of none. And the facts of the case show, despite

---

[3] *See* (DE [216-17]).

the mold exclusion provisions, AmTrust did in fact indemnify and defend the insureds throughout the course of the Underlying Action. The factual record, as summarized *supra* section I., clearly demonstrates Defendants monitored the action under a reservation of rights because the primary insurer, AmTrust, was in fact defending the action. The Court finds no reasonable jury could conclude Defendants disclaimed coverage. For this reason alone, Plaintiff is unable to prove the second element to enforce a *Coblentz* agreement, and Defendants are entitled to judgment as a matter of law.

### C. Breach of Cooperation Provision

By accepting and not rejecting an insurer's reservation of rights defense, an insured must cooperate with the insurer throughout the litigation. *See Am. Pride Bldg. Co., LLC*, 601 F.3d at 1149. But "Florida law does not allow an insurer to escape liability each time an insured fails to cooperate." *Travelers Indem. Co. of Conn.*, 194 F. Supp. at 1232. "[T]o constitute a breach of the policy, the insurer must show [1] that the lack of cooperation was material and [2] that it was substantially prejudiced in the particular case by failure to cooperate." *Id.* (citing *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976)). Courts have found *Coblentz* agreements unenforceable where the insured breaches the policy's cooperation provision. *See, e.g.*, *Travelers Indem. Co. of Conn.*, 194 F. Supp. 3d at 1231–32 (finding $40 million Coblentz agreement unenforceable where insured breached cooperation provision).

Here, the record indicates there is no question Akam breached the policy's cooperation provision. Akam completely blocked Chubb from associating in counsel to supplement Akam's trial team as trial was approaching. This group of attorneys then proceeded to settle the matter and pass off a massive consent judgment collectible against the insurer whose attorney they barred from participating in the settlement

negotiations. This is not a case of an insured's failure to provide certain documents, failure to provide meaningful information, or any other sort of close question on the issues of whether there is a material lack of cooperation and whether said lack of cooperation was substantially prejudicial. This case involves an insured, not simply failing to cooperate, but entirely preventing an insurer from providing a defense to the insured. The Court finds no reasonable jury could conclude Akam did not violate the policy's cooperation provision. On this basis alone, Plaintiff is unable to satisfy her burden of proof because Akam has materially breached the underlying insurance contract the *Coblentz* agreement is built upon.

### D.  Reasonableness and Good Faith of *Coblentz* Agreement

A *Coblentz* agreement "settlement may not be enforced against the [insurer] if it is [1] unreasonable in amount or [2] tainted by bad faith." *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984). And the party seeking to enforce it bears the initial burden to prove each of these elements. *Id.* This rule addresses "[t]he real concern . . . that the settlement between the claimant and the insured may not actually represent an arm's length determination of the worth of the plaintiff's claim" because the claimant "has little or nothing to lose because he will never be obligated to pay." *Id.* A *Coblentz* agreement does not "authorize the insured to indiscriminately load the carrier's wagon with bricks of damage that no reasonable person would expect as consequences of the underlying claim." *Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2014 WL 5325728, at *9 (M.D. Fla. Oct. 20, 2014).

"A determination of reasonableness of the settlement agreement is made in view of the degree of probability of the insured's success and the size of the possible recovery." *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008)

(citing *Indep. Fire Ins. Co. v. Paulekas*, 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994)) (cleaned up). A court will find the existence of bad faith and collusion if there is "an agreement in which an insured agrees to accept essentially any judgment amount that the injured party seeks in exchange for a promise to not execute against it." *Sidman v. Travelers Cas. and Sur.*, 841 F.3d 1197, 1206 (11th Cir. 2016).

Here, the *Coblentz* settlement amount of $14.5 million is 58 times the pre-trial report settlement range of $150,000 – $250,000. And even more astoundingly, this amount is more than three times any demand ever made by Davis in the course of the Underlying Action—Davis' highest settlement demand was for $3.75 million in March 2019. With these two facts alone, the Court finds no reasonable jury could conclude this agreement was not grossly unreasonable or tainted by bad faith. In sum, a Motion for Summary Judgment is based on record facts presented to the Court. Simply put, if having viewed those facts—and there being no genuine disputes—and the applicable law, the Court would at trial grant a directed verdict and never send the case to the jury, the Motion should be granted and summary judgment entered. This is that case.

Accordingly, for the reasons discussed above, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (DE [203]) is **GRANTED**. Final judgment will be entered separately pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 11th day of January 2023.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF